# Coffman v. Louisville & Nashville R. R. Co.

## Setting Out Fire.

(Decided November 13, 1913.    63 South. 527.)

1. *Insurance; Fire Policy; Subrogation.*—Upon paying a fire loss an insurer may sue the person negligently causing the fire, using the name of the insured, for the resulting damages, and retain from the amount recovered the sum paid to the insured, and turn the balance over to him, or the insured may sue the wrongdoer for his own benefit, and that of the insurer.

2. *Champerty and Maintenance; Contracts Indemnifying Costs.*— It is immaterial to the person sued whether an insured, suing for himself and the insurer, for damages for the destruction of his property by fire, is indemnified by the insurer as to the cost of the litigation; the doctrine of maintenance not being applicable to such an indemnity contract.

3. *Railroads; Setting Out Fire; Action by Insurer; Evidence.*— Where the action is by a property owner for himself and for the insurer to recover damages from a railroad company for the destruction of property by fire, a subrogation agreement executed between the owner and the insurance company transferring to the latter the right of action of the owner to the extent of the insurance, was irrelevant.

4. *Same.*—An agreement between the owner and an insurance company by which the insurance company agreed to indemnify the owner for cost and expenses incurred in an action by the owner, suing for himself and the insurer against a railroad company for the negligent destruction of the property by fire was irrelevant and inadmissible.

5. *Same; Jury Question.*—Where there was evidence that a locomotive emitted live sparks of unusual size or number on a particular occasion, or threw live sparks to an unusual distance, it became a question for the jury whether the locomotive was properly handled and properly constructed and equipped.

6. *Same; Proof of Negligence.*—Proof that a fire was caused by a locomotive in the control of the employees of a railroad company

acting within the line and scope of their employment, makes out a prima facie case against the railroad company, either in the improper management of the locomotive or its improper equipment and construction, and shifts the burden upon the railroad company to show that its employees properly handled the locomotive and that it was properly constructed and equipped.

7. *Appeal and Error; Harmless Error; Admission of Evidence.*— The error in admitting an agreemnt between the owner and the insurer by which the insurer agreed to indemnify the owner for the cost and expenses incurred in an action by the owner against the railroad company for damages for setting out fire must be held prejudicial to plaintiff's cause as calculated to lead the jury to the conclusion that plaintiff had so little faith in his case that he required an indemnity bond before he would bring the action.

8. *Same; Instructions.*—The error in instructing that the burden was on plaintiff to show that the locomotive alleged to have set out the fire was improperly handled or constructed, when the property was fired by sparks from it, was improper and prejudicial to plaintiff's cause.

APPEAL from Limestone Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Lawrence D. Coffman, individually and for the use of the American Home Fire Insurance Company, against the Louisville & Nashville Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The complaint alleges in effect that plaintiff was the owner of a certain storehouse on the west side of the tracks of defendant in the village of Veto, Ala., about 42 feet from the side track of defendant; that said storehouse and building contained a stock of general merchandise and fixtures, and a side room connected therewith containing a large quantity of corn, beans, and other articles of value; that the storehouse and its contents were wholly destroyed by fire, set out by sparks emitted from a steam engine or locomotive of defendant; and that at that time the above-mentioned fire insurance company was carrying a policy of fire insurance in the sum of $2,000 on said building, fixtures, and contents, which sum of money the said insurance com-

pany had paid to said plaintiff, Lawrence D. Coffman. The first count then alleges that the agents, servants, or employees negligently set fire to and destroyed the above-described property, to the damage of the plaintiff in the sum of $4,500. The second count attributes the cause of the fire to the emission of great quantities of sparks of large and unusual size, which set fire to and destroyed the building. The third count alleges that defendant negligently caused the destruction by fire of plaintiff's property by causing, suffering, or permitting sparks and fire to be emitted from one of its engines, and thereby set fire to plaintiff's said property, which was destroyed by reason of the negligence of defendant, its servants, agents, or employees, and that the negligence consisted in negligently selecting, maintaining, and operating an engine in a defective condition, etc. The fourth count alleges that the engine was not properly equipped with a spark arrester, or was negligently handled by defendant, its servants, and agents, so that large quantities of very large, live sparks were emitted, and set fire to the property. There were several rulings on the pleadings not necessary to be mentioned. The subrogation agreement alluded to sets out the fact of the existence of the insurance policy, its contents, the fact that it had been paid to Coffman, and, in consideration thereof, all the claim of plaintiff, by reason of said loss and damage, is assigned, set over, and transferred to the insurance company, together with all right, claim, interest, etc., to the extent of $2,-000, and any right of action in that amount that the plaintiff might hold against the Louisville & Nashville Railroad Company. The indemnity agreement is as follows: "State of South Carolina. Whereas, Lawrence D. Coffman did heretofore institute a suit in the circuit court for the county of Limestone in the state

of Alabama at the request and for the benefit of the American Home Fire Insurance Company, of Greenville, South Carolina, against the Louisville & Nashville Railroad Company, the purpose of which, among other things, is to recover against said railroad company for damages and loss caused by fire to the property of the said Lawrence D. Coffman, which, however, was insured by the American Home Fire Insurance Company; and whereas, it was agreed at the time of instituting said suit that the American Home Fire Insurance Company should indemnify and hold harmless the said Lawrence D. Coffman from all liability for costs incurred, or to be incurred, in said suit: Now, therefore, in consideration of the premises, the American Home Fire Insurance Company does hereby agree to indemnify and save harmless the said Lawrence D. Coffman from all costs which may be adjudged against him, or to which he may be put in and by reason of said suit, to the end that the said Lawrence Coffman shall be protected from any loss arising by reason of the prosecution and pendency of said suit. In testimony," etc. Signed and sealed by the American Home Fire Insurance Company, by Charles M. Hard, its president.

JAMES G. RANKIN, and W. R. WALKER, for appellant. Under the facts in this case, the burden was shifted to the defendant to acquit itself of negligence.—*Houston v. L. & N.*, 161 Ala. 107; *L. & N. v. Sherill*, 152 Ala. 213; s. c. 148 Ala. 1; *A. G. S. v. Taylor*, 129 Ala. 238; *L. & N. v. Reese*, 85 Ala. 497; *L. & N. v. Malone*, 109 Ala. 509; *L. & N. v. Marbury L. Co.*, 125 Ala. 237; s. c. 132 Ala. 520. Where an insurance company pays for property tortiously burned by a third person, it becomes subrogated to the rights of the insured, and may sue in its

own name, or in the name of the insured for its use, and it is no concern of such third person that the property burned has been paid for by the insurance company.—*Long v. K. C. M. & B.,* 170 Ala. 635; *So. Ry. v. Stonewall I. Co.,* 163 Ala. 161; 23 L. R. A. (N. S.) 870; 31 L. R. A. 604; 46 Am. Dec. 719. Evidence which does not tend to establish any material fact is not admissible.—*Glass' Case,* 147 Ala. 50; *Singleton v. Thomas,* 73 Ala. 205; *McGhee v. Billingsly,* 3 Ala. 679. The admission of such evidence is ground for reversal unless it appears clearly that no injury resulted.—*Thomas v. deGraffenried,* 27 Ala. 651; *L. & N. v. Price,* 159 Ala. 213; *Brandon v. Progress D. Co.,* 167 Ala. 365; *Wes. Ry. v. Irwin,* 2 Ala. App. 577. The admission of such evidence over objection magnifies it to the jury, and is ground for reversal.—*Poole v. Deevers,* 30 Ala. 672; *Abraham v. Nunn,* 42 Ala. 51; *Bir. R. & E. Co. v. Clay,* 108 Ala. 234.

SANDERS & THACH, for appellee. There was no error in refusing charge 1 requested by appellant.—*So. Ry. v. Darwin,* 156 Ala. 311; (dissent by McClellan). The court did not err in giving charge 8 requested by appellee.—*L. & N. v. Rose,* 89 Ala. 497; *L. & N. v. Marbury L. Co.,* 125 Ala. 237; *L. & N. v. Sullivan T. Co.,* 35 South. 327; *A. G. S. v. Sanders,* 145 Ala. 449. The court properly gave charge 9 requested by appellee.—*A. G. S. v. Sanders, supra; A. G. S. v. Taylor,* 29 South. 675. On the authorities above cited, charge 12 was properly given, as was charges 10, and the unnumbered charges set out in the transcript. Counsel discuss the evidence, but without citation of authority. Under the law and the articles of subrogation, the insurance company could have maintained its suit for $2,000 against the railroad company (*So. Ry. v. Stone-*

*wall I. Co.,* 163 Ala. 161; s. c. 58 South. 313) and it is reasonable to infer that this would have been the extent of the litigation if the insurance company had not guaranteed cost and attorney's fees which rendered the contract and agreement void as champertous.—Storey's Eq. sec. 1050; *Poe v. Davis,* 29 Ala. 676; *Gilman v. Jones,* 87 Ala. 698; 2 M. & K. 590.

DE GRAFFENRIED, J.—The plaintiff, Lawrence D. Coffman, brought this suit for his own benefit and for the benefit of the American Home Fire Insurance Company, of Greenville, S. C. Certain property of the plaintiff, which he had insured against loss by fire in the said American Home Fire Insurance Company, was destroyed by fire. The plaintiff's said insurance amounted to $2,000, and he is of the opinion that the said property so insured and so destroyed by fire was worth about $4,000. Shortly after the property was burned, the said insurance company paid to the plaintiff the said sum of $2,000, and, if the plaintiff is correct in his valuation of the property, he was thus reimbursed for only a part of the loss which was sustained by him in the destruction of the property.

The plaintiff's said property was situated near the roadbed of the defendant railroad company, and the plaintiff contends that the said property was set on fire by sparks which were emitted by a passing locomotive of the defendant. The plaintiff also contends that on the named occasion the locomotive was either so negligently managed by the servants of the defendant who were in charge of it, and who, at the time of such negligence, were acting within the scope of their employment, or that the locomotive was so improperly constructed or equipped as to permit sparks of unusual size or in unusual quantities to escape from the locomotive,

and that by reason of one or more of these acts of negligence on the part of the defendant or of its servants or agents the plaintiff's property was set on fire and burned.

1. When property which is insured against loss by fire is burned through the actionable wrong of another, the insured and the insurer are, in contemplation of law in so far as the loss is concerned, one person. The insurer may, if he pays the loss, sue the wrongdoer, in the name of the insured, for the damages naturally and proximately resulting to the insured from the wrong. If the insurer, in such a case, recover a judgment, he may retain out of the amount collected thereon the sum which he has paid the insured and the interest thereon; the balance of the money so collected being the property of the insured. Of course in such a case the insured may sue, for his own benefit and for the benefit of the insurer, the wrongdoer for the loss caused by the wrong.

In all suits so brought the form of the action protects the wrongdoer from the possibility of a double recovery on account of the wrong, and he has nothing whatever to do with the question as to what is to become of the money which may be recovered of him, or with the question as to whether the insured or the insurer is to pay the costs and expenses of the litigation. In suits so brought these matters are, as to the wrongdoer, res inter alios acta, and are matters in which he has no concern.—*Long, et al. v. K. C., M. & B. R. R. Co.,* 170 Ala. 635, 54 South. 62.

The above propositions spring out of the fact that when, through the wrong of another, an insurer is required to pay money to the party wronged, it is but natural justice that, if the party wronged recovers of the wrongdoer the damages suffered by him on account of

the wrong, the insurer shall receive back, out of the money so recovered, enough money to place him in the position which he occupied before the wrong was committed.   In this way the entire loss falls upon the party who caused the loss, the insurer loses no money, and the injured party is made whole.   There is therefore in such a suit, no field, as between the insured, the insurer and the wrongdoer, in which the doctrine of maintenance can operate, and the only parties who are in the least interested in the question as to who is to pay the costs of the litigation in the event the plaintiff fails in the suit are the insurer and the insured.   The form of the action discloses the pecuniary interest of both the insurer and the insured in the litigation, and neither the alleged wrongdoer nor the jury trying the case has any interest in the question as to whether there is or is not an agreement on the part of the insurer and the insured that the insurer will pay the costs in the event the plaintiff fails in the suit.—6 Cyc. pp. 580, 581, 582, and notes.

2. In this case the trial judge, it seems without objection on the part of the plaintiff, permitted the defendant to introduce in evidence what is called a subrogation agreement.   This agreement had no bearing upon any real issue in the case, and was of no value as evidence.

3. Against the objection of the plaintiff, the defendant was permitted by the trial judge to introduce in evidence what is called an indemnity agreement, which agreement the reporter will set out in his summary of the facts of this case.   This agreement was a mere private agreement between parties who were jointly interested in the successful issue of this suit against the defendant, and was an agreement in which no person except the parties thereto had any concern whatever.   It

was absolutely irrelevant and immaterial to any true issue in this case, and it was admitted in evidence against the protest and over the objection of the plaintiff.

As the verdict of a jury is required by the law to be based only upon the evidence—as they are the sole triers of the facts—it is essential that they shall be permitted to receive only relevant evidence, and shall at no time be permitted to receive evidence which is not only irrelevant but which may have a tendency to prejudice, in the slightest, the cause of either party. Jurors know, or should know, that no evidence goes before them which is not for their consideration, and, where irrelevant evidence is admitted against a party to a cause, against his objection, a juror who is not accustomed to make nice discriminations may well feel that such evidence is not only material but that its tendencies are hurtful to the party against whom it is offered.

The indemnity agreement tended to show, to a mind unaccustomed to weighing testimony in nicely adjusted balances, that the plaintiff in this case had so little faith in his case that he required an indemnity bond against possible loss on account of its further maintenance. In fact, that agreement, taken in connection with the subrogation agreement which was admitted in evidence without objection, has furnished counsel for appellee with a handle for an argument to this court, that the suit (to use the language of appellee's counsel in their brief) "cannot be properly maintained and prosecuted." The complaint showed that the insurance company and the plaintiff were interested in the suit, and the allowance by the court of the indemnity agreement in evidence, against the objection of the plaintiff, was not only erroneous but was an error which probably resulted in injury to appellant.

[Coffman v. Louisville & Nashville R. R. Co.]

4.   There was evidence in this case which, if believed by the jury, authorized them to infer that the plaintiff's property was set fire to by sparks which were emitted from a locomotive of the defendant.   The evidence for the defendant tended to show that the locomotive was skillfully managed, that it was properly constructed and properly equipped, and that, on the named occasion, it emitted no sparks of unusual size or in unusual numbers.   The evidence of the plaintiff, however, tended to show that the locomotive, at the time mentioned, not only emitted sparks of unusual size but that it emitted an unusual number of sparks.   This being the situation of the testimony, the question as to whether the locomotive was in fact properly constructed and properly equipped, or if that was true, then whether it was properly and skillfully handled, was for the jury.

While we are on this subject, we may as well say that when, in a case like the present, there is evidence that a locomotive on a particular occasion emitted live sparks of unusual size, or that it emitted live sparks in unusual numbers, or that it threw live sparks to an unusual distance, then it is a question for the jury, and for the jury alone, to say whether the locomotive was or was not, at the particular time, properly and skillfully handled, or whether or not it was properly constructed or properly equipped.   Under the law of this state, when a plaintiff, in a case like the present, shows by his evidence the single fact that a fire was caused by a locomotive which was handled at the time by servants of the defendant acting within the scope of their employment, he has by that evidence made out, prima facie, a case of negligence against the defendant.   This prima facie negligence consists in either the improper management of the locomotive by the servants of the defendant or in the improper construction and equipment of the

locomotive. When the plaintiff in such a case has made such proof, then the law shifts the burden to the defendant to show that its said servants properly handled the locomotive, and that the locomotive was properly constructed and equipped.—*L. & N. R. R. Co. v. Marbury Lumber Co.*, 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; *McCary v. A. G. S. R. R. Co.*, 182 Ala. 597, 62 South. 18.

Charge 8, given by the trial court to the jury at the defendant's request, is in the following language: "I charge you that the burden of proof is on the plaintiff to establish to your reasonable satisfaction that the defendant negligently set fire to and destroyed the property of the plaintiff mentioned in this suit before the plaintiff would be entitled to recover anything, and the mere fact the fire was set out from the engine in question, and set fire to the property mentioned, if you are reasonably satisfied from the evidence in this case that said property was destroyed by fire communicated from said engine, would not entitle the plaintiff to recover, unless plaintiff goes further, and shows to your reasonable satisfaction that the engine in question was either improperly handled or was improperly equipped, and, in the event of his failure to establish this to your reasonable satisfaction, your verdict must be for the defendant."

The above charge placed the burden, under the facts hypothesized in the charge, of showing that the locomotive was improperly handled, or that it was improperly constructed, upon the plaintiff. The law, under the facts hypothesized in the charge, placed the burden of showing that the locomotive was properly handled and properly constructed and equipped upon the defendant. The giving of charge 8 to the jury was an error which was probably prejudicial to the plaintiff, and the giv-

ing of the charge was therefore reversible error.—*Mc-cary v. A. G. S. R. R. Co., supra; L. & N. R. R. Co. v. Marbury Lumber Co., supra.*

There are certain other questions presented by this record; but we do not deem it necessary to discuss them. The errors pointed out require a reversal of the judgment of the court below, to the end that a trial of the case may be had in accordance with·the views expressed in this opinion.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.