(128 So. 132)

**TENNESSEE COAL, IRON & R. CO. et al.
v. JOURDAN et al.**

8 Div. 77.

Supreme Court of Alabama.
March 13, 1930.

Rehearing Granted April 17, 1930.

Benners, Burr, McKamy & Forman, of Birmingham, for appellant Coal, Iron & R. Co.

Harsh & Harsh, of Birmingham, and A. H. Carmichael, of Tuscumbia, for appellant Lumber Co.

T. J. Lamar, of Birmingham, for appellants Lamar and McCrossin.

Kirk & Rather, of Tuscumbia, for appellees.

ANDERSON, C. J.

As we understand, the bill is by the second mortgagees against the mortgagor and assigns, the first mortgagees, and the Jefferson Lumber Company and the Tennessee Company, seeking a foreclosure of the complainants' mortgage and a discovery and accounting against the last two mentioned respondents for timber or lumber received by them from the mortgaged premises, with notice that it was covered by the complainants' mortgage as well as the first mortgage of Webber and Coffin, who were made respondents to the bill. It should be borne in mind that the complainants in this bill are also the mortgagors to Webber and Coffin, and **are**

legally responsible for said first mortgage indebtedness, notwithstanding the payment of same was assumed by the mortgagor in the second mortgage; and the bill seeks a sale of the property with the proceeds of the sale to be applied to the first mortgage indebtedness for which the complainants are responsible.

The bill as well as the decree likewise regard the first mortgage indebtedness as paramount, and concede that the amount recovered for the waste or conversion of the timber should first be applied to the extinguishment of the first mortgage indebtedness before any part thereof can be applied to the indebtedness covered by the second mortgage.

■ It is the general rule that in proceedings to foreclose a mortgage, persons having paramount interests to the mortgage sought to be foreclosed are generally neither necessary nor proper parties to the suit, because the only proper object of the proceeding is to bar all rights subsequent to the mortgage. In some cases, however, prior mortgagees are made parties to the bill so that the court may, with their consent, order a sale of the whole estate, and thus make a good and complete title to the purchaser and in which case his mortgage is first paid. Here we have a case not only where the first mortgage is to be paid, but one in which these complainants are responsible and which must be paid out of whatever they may realize under their second mortgage. These facts remove this case from the influence of the rule, that the foreclosure of a second mortgage does not affect the first mortgage, and that the proceeds of the sale should go to the payment or satisfaction only of the second mortgage. The record shows that the first mortgagees consented to or ratified the sale and the application of the proceeds thereof, less the cost, to their mortgage indebtedness and gave the register a receipt for same. 7 Mayfield's Digest, p. 594.

■ The bill is not multifarious. It seeks relief growing out of the same subject-matter or relates to the same property. Section 6526, Code of 1923; Rountree v. Satterfield, 211 Ala. 464, 100 So. 751.

We agree with the trial court to the effect that the Jefferson Company and the Tennessee Company both had notice, actual and constructive, of the mortgage lien on the timber, and that the same had not been released when cut and removed from the land. McKinley, a partner of the former as well as an agent or agents of the Tennessee Company, was thoroughly aware of the location of the timber and with the negotiation between Powers and the complainants and with the organization and operation of the Tishomingo Company. Each concern had a representative on the ground throughout the operation of the mills and who sometimes went in the woods, and who must of necessity have known that the cutting was from the Webber and Coffin lands, and could have easily found out if it had been released as per the terms of the mortgage. Nor do we think that the lien of Webber and Coffin, or of the complainants, was waived through the conduct of John Burns. True, Burns was an agent of Webber to a certain extent, but he was also, at the same time, an agent or servant of the Tishomingo Company, and it is questionable if he had authority, independent of his dual capacity, to release the timber; but aside from this Burns testified, and which we feel inclined to accept, that he notified and in a sense protested against getting timber off of the unreleased land to appellants' agents, including Abernathy who represented the Tennessee Company.

■ The trial court seems to have submitted to the register the ascertainment of the indebtedness due upon the respective mortgages, but did not submit to him the ascertainment of the damages, or the value of the stumpage for the timber improperly removed and which was traced to the possession of the Jefferson and Tennessee Companies. As to the correctness of the amount due on the mortgages, owing to the view we take as to the amount of damage, this question is of little concern to the Jefferson and Tennessee Companies, as from any standpoint, there was enough due under the mortgages to absorb or exhaust the sum ascertained to be due from these companies. For like reasons the Jefferson and Tennessee Companies are not concerned with the amount of attorneys' fees as the amount due on the mortgages exclusive of said fees is sufficient to absorb the sum due by them.

We think the damages assessed by the trial court, that is the value of the stumpage, were grossly excessive and contrary to the weight and most reasonable view of the evidence. We therefore think, and so hold, that a fair valuation of the stumpage is $4.50 per thousand, approximately $61,600 with interest, and that this is the proper amount of damages to be assessed against the Jefferson and Tennessee Companies, and which should be apportioned between the parties according to their respective interests.

■ We do not think that the sale of the bankrupt assets of the Tishomingo Company to Jourdan, Jr., has any influence whatever upon the liability of the Jefferson and Tennessee Companies, though it may have some bearing upon the rights of the intervenors Lamar and McCrossin. These assets were no doubt sold subject to the mortgages and while the purchaser, Jourdan, Jr., assumed to pay what balance may be due on the mortgages after a deduction of the price at foreclosure sale and the amount of damages recovered for timber converted, it in no wise affects the lien of the mortgagees or the right of the owners of

same to recover of the Jefferson or Tennessee Companies the amount due by them.

■ The Tennessee Company complains that the relief sought under its cross-bill was ignored, although the averments were admitted by the Jefferson Company. True, the decree of the trial court did not deal specifically with this question, but it found these two companies equally liable and ordered executions indiscriminately against them upon a default in the payment. We think that the issue made by the cross-bill should have been regarded as it was admitted by the Jefferson Company, and a decree rendering the one primarily liable and the other secondarily so could have been of no prejudice to the complainants who could proceed against the Tennessee Company upon a failure to make their money out of the Jefferson Company.

■ As to the intervention of Lamar and McCrossin, the trial court merely found that by the assignment of the notes the complainants did not become personally liable, and as to this we are in agreement. We may also add that no liability should be fixed upon them by permitting or allowing the cutting and removal of the timber. It does seem that J. C. Jourdan, Jr., assumed the balance due on the mortgages and which included the notes held by these intervenors, and that they have recourse against him, or the other complainants, if it is established that Jourdan, Jr., was acting for them throughout; but this question was not passed upon by the trial court and cannot be considered by this court upon the present appeal.

The decree of the circuit court is reversed in part and affirmed in part, is rendered in part and is remanded, in order that the trial court may modify the former decree so as to conform to this opinion, and the cost of the appeal is taxed to the appellees.

Affirmed in part, reversed and rendered in part, and remanded.

### On Rehearing.

Both the Jefferson Company and the Tennessee Company have requested this court, that as the evidence is all in and as all to be done upon a remandment would be to fix and calculate the interest, to correct and render in order that the matter be foreclosed except as to the intervenors.

■ As we understand the rule, the demand should bear interest as from the date of the conversion or destruction of the complainants' lien. Where damages claimed are for property which has been destroyed or injured, which has an ascertainable money value, it is proper to instruct the jury to add interest to the damages ascertained from the date from which the injury was done. Alabama Power Company v. Allen, 218 Ala. 416, 118 So. 662; A. & B. & A. R. R. v. Brown, 158 Ala. 621, 48 So. 73; M. & O. R. R. v. Williams, 219 Ala. 238, 121 So. 722, 730.

The case of Grand Bay Co. v. Simpson, 207 Ala. 303, 92 So. 789, has no application to a case of this kind. There an accounting was involved wherein mutual unliquidated accounts existed between the parties.

■ As the conversion was of different dates and covered a long period, we adopt the suggestion of appellees' counsel as found in reply brief as follows: "Appellee suggest that interest be charged on the value of the stumpage from the time Tishomingo Land & Lumber Company was adjudged a bankrupt, June 29, 1925."

We adhere to the former opinion except to render instead of remand the cause. We therefore render a decree in favor of appellees against the Jefferson Company and the Tennessee Company for $61,600 with interest, $23,750.19 making a total of $85,350.19. Execution to be issued against the Jefferson Lumber Company and its sureties and if returned satisfied no execution is to issue against the Tennessee Company, but if the execution is returned nulla bona, or not satisfied in full, then execution will issue against the Tennessee Company for the amount due on the decree. Without prejudice to the interveners.

Application granted, decree of remandment is set aside, and a decree is here rendered for the amount due.

SAYRE, THOMAS, and BROWN, JJ., concur.